**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LEWIS LANGSTON and**
**NATASHA LANGSTON, individually and**
**as natural parents and guardians on behalf**
**of TYLER LANGSTON, a minor,**

      **Plaintiffs,**

**vs.**
                                     **Case No. 8:14-cv-2592-T-27TGW**

**CITY OF NORTH PORT, et al.,**

      **Defendants.**
_____/

**ORDER**

**BEFORE THE COURT** is Defendant City of North Port's Motion to Dismiss, or, in the Alternative, Motion for a More Definite Statement (Dkt. 3), which Plaintiffs oppose (Dkt. 5). Also pending is the Motion to Dismiss Plaintiffs' Amended Complaint or, in the Alternative, Motion for More Definite Statement filed by Chief Kevin Vespia and Keith Bush (Dkt. 9). A response to this motion is unnecessary, since the Amended Complaint is subject to dismissal as to the City and Chief Vespia and Plaintiffs will be granted leave to file a second amended complaint.

*Background*

Plaintiffs filed this action on behalf of their seventeen-year-old son, Tyler Langston. Plaintiffs allege that Tyler was attacked by a K-9 police dog, handled by Defendant Keith Bush, an officer with the City of North Port Police Department. Plaintiffs allege that despite Tyler's full compliance with the officers, the police dog bit Tyler's leg for a "prolonged" period of time, causing serious injury. Plaintiffs also allege that an unidentified officer struck Tyler on the side of his head,

causing further injury.  (Dkt. 2, ¶¶ 9-13).

## Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to provide a short and plain statement of his claim sufficient to demonstrate an entitlement to relief and to give fair notice of the grounds on which the claim rests.  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff is not required to set out in detail the facts on which the claim is based.  However, a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp.*, 550 U.S. at 555.  In evaluating a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the relevant question is not whether the plaintiff will ultimately prevail, but whether the allegations are sufficient to allow the plaintiff to conduct discovery, in an attempt to prove the allegations.  *See Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986); *Murphy v. Fed. Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000).

## Discussion

### 1.  Negligence (Count I)

In Count I, Plaintiffs assert a negligence claim against the City and Chief Vespia.[1]  Chief Vespia contends that since he is being sued in his official capacity, he should be dismissed since an action against him is duplicative of the claims against the City.  He is correct.  A review of the Amended Complaint (and the case style) confirms that the intended defendant is the City and that Chief Vespia is named as a defendant only in his official capacity. "A suit against a state official in his or her official capacity is not a suit against the official but is rather a suit against the official's

---

[1] Count I, as well as the other counts in the Amended Complaint, purports to limit each claim to particular defendants in the title, but names all three defendants in the "wherefore clause." Plaintiffs are directed to eliminate this inconsistence in the second amended complaint.

office." *LaMarca v. Turner*, 995 F.2d 1526, 1542 (11th Cir.1993); *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007). Accordingly, Plaintiffs' claims against Chief Vespia are redundant of its claims against the City and he is due to be dismissed as a party defendant. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (suit against municipal officer in their official capacity redundant).

"To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). Pursuant to Fla. Stat. § 768.28, the state of Florida, its agencies, and its subdivisions have waived sovereign immunity for tort liability. *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 932 (Fla. 2004); *see* Fla. Stat. § 768.28(1), (5). In particular, a government entity may be liable, under a *respondeat superior* theory, for acts and omissions of an employee committed in the scope of his employment. Fla. Stat. § 768.28(1); *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987).[2] The waiver of sovereign immunity does not, however, extend to "discretionary functions, such as development and planning of governmental goals and policies." *Lewis*, 260 F.3d at 1266; *Wallace v. Dean*, 3 So. 3d 1035, 1053-54 (Fla. 2009) (reviewing four-part test applied to determine whether challenged conduct is "discretionary" or "operational" in nature).

In Paragraph 18 of the Amended Complaint, Plaintiffs allege that the City acted negligently by (1) failing to properly train the K-9 police dog, (2) using and failing to control, restrain, and/or properly release the dog, (3) failing to warn Tyler of the dog's tendencies, (4) replacing the dog's

---

[2] Conversely, for an employee to be held personally liable, the employee must have acted in bad faith, with malicious purpose, or in a willful and wanton manner. *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir.2004); Fla. Stat. § 768.28(9)(a). Thus, "[i]n any given situation either the agency can be held liable under Florida law, or the employee, but not both." *McGhee v. Volusia County*, 679 So. 2d 729, 733 (Fla. 1996).

teeth with titanium, causing the dog to be more vicious, and (5) failing to adequately train and supervise Officer Bush. (Dkt. 2 ¶ 18(a)-(k)). As an initial matter, Count I requires a more definite statement, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, because it is pled in a shotgun manner. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 983-84 (11th Cir. 2008). In addition to incorporating all preceding factual allegations, Plaintiffs allege multiple theories of liability within Count I, including negligence based on vicarious liability, negligent training and supervision, and negligent failure to warn. *See id.* at 980 & n.57 (noting that multiple claims for relief may not be included in a single count). The City's alternative motion for a more definite statement is therefore granted as to Count I.

Moreover, to the extent that Plaintiffs allege that the City is vicariously liable for the officers' use of excessive force, Florida courts "have consistently and unambiguously held that it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort." *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) (internal quotation marks omitted); *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1294 (11th Cir. 2009); *Quilling v. Price*, 894 So. 2d 1061, 1064 (Fla. 5th DCA 2005). In order to state a viable claim, the alleged negligent act "must pertain to something other than the actual application of force during the course of arrest." *Secondo,* 327 F. App'x at 131 (internal quotation marks omitted). The majority of the allegations in Paragraph 18 appear to relate to the actual application of force against Tyler, and those allegations are therefore subject to dismissal with prejudice.

Plaintiffs also attempt to allege claims based on the City's alleged failure to train and supervise. In contrast to negligence claims relating to excessive force, "negligent retention or supervision of police officers or deputies is a viable tort which could be brought against the state or

4

a municipality in a proper case." *Storm v. Town of Ponce Inlet*, 866 So. 2d 713, 717 (Fla. 5th DCA 2004). Liability for negligent supervision occurs "where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *Malicki v. Doe*, 814 So.2d 347, 362 n.15 (Fla. 2002) (internal quotation marks omitted). In the Amended Complaint, Plaintiffs do not allege that the City had the requisite knowledge. *Cf. Slonin v. City Of West Palm Beach*, 896 So. 2d 882, 884 (Fla. 4th DCA 2005) (complaint was sufficient to state claim where plaintiff alleged that the city knew of employee's assault and battery, knew of previous complaints against employee by plaintiff and others, and failed to take corrective action).

Further, with respect to the negligent training claims, it is well-established that policy decisions regarding the training and the subject matter included in training are "discretionary" governmental functions covered by sovereign immunity. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1118 (11th Cir. 2005). By contrast, challenges to the implementation of a training program are "operational" acts not subject to sovereign immunity. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). Plaintiffs fail to include supporting factual allegations for their negligent training claims, and it is not clear whether they are challenging policy-level decisions regarding training, or the implementation of the City's training policies. To the extent that Plaintiffs seek to replead the negligent training claims, they are directed to do so in discrete counts against specific defendants and to include the necessary factual allegations. As to those defendants.

### 2.    *42 U.S.C. § 1983 (Count II)*

In Count II, Plaintiffs assert a Section 1983 excessive force claim against Kevin Bush, individually. First, Defendant's challenge to the sufficiency of the factual allegations of excessive

force are unpersuasive. Plaintiff s allege that Bush was a K-9 Officer with the City and that the "K-9 dog's handler" at the time of the incident complained of was Bush (¶¶ 5. 11). Plaintiffs allege Tyler was "fully compliant with the officers" when the K- 9 was released (¶ 12), that Bush released the K-9 in circumstances that did not warrant the release (¶ 24). These factual allegations are more than mere conclusions or labels and are sufficient to fairly inform Bush of what he is being sued for.

Notwithstanding, Bush's assertion of qualified immunity raises a more substantive challenge which cannot be resolved on the allegations in the Amended Complaint. Generally, qualified immunity shields an officer from liability for torts committed while performing discretionary duties, unless the conduct violates a clearly established statutory or constitutional right. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir.2008). Plaintiffs allege that Officer Bush was acting in the capacity as a police officer at the time of the incident (¶ 24). It can therefore be inferred that he was within his discretionary authority at the time. Plaintiffs therefore bear the burden of demonstrating that qualified immunity should not apply. *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012).

A two step process for resolving a qualified immunity claim typically applies. *Id.* First, Bush's conduct must amount to a constitutional violation. Second, it must be shown that the right claimed to have been violated was "clearly established" at the time. *Id.* Among the considerations is the severity of the offense at issue, whether Tyler posed an immediate threat to the safety of the officers, and whether he resisted arrest or attempted to evade arrest by flight. *Id.* From the allegations of the Amended Complaint, it cannot be determined whether Bush's conduct was objectively unreasonable because the facts which confronted him are not alleged sufficiently. One cannot tell from the allegations why Officer Bush released the K-9 and the circumstances he was confronted with. Nor can it be determined whether Bush's actions violated a clearly established right. Even of Plaintiffs allegations are considered true, they are not sufficient to establish a constitutional violation

that would have been reasonably known to Bush. To overcome the defense of qualified immunity, Plaintiffs must plead more than they have.

In particular, Plaintiffs do not allege the circumstances under which Tyler came into contact with Bush and his K-9, other than the conclusory allegations that he was an "invitee at a friend's residence" and that he was bitten "without provocation or fault" on Tyler's part (¶ 9). Although Plaintiffs allege that Tyler was "fully compliant" and "on the ground with arms and legs spread" when bitten, Plaintiffs do not describe the offense for which Tyler was being arrested or confronted. Nor do Plaintiffs allege the duration of the K-9's alleged attack, other than the conclusory description of "prolonged period of time" (¶ 24). And one cannot ascertain from the allegations that the release of the K-9 was "gratuitous and sadistic." *Edwards v. Stanley*, 666 F.3d 1289 (11th Cir. 2012). In sum, the factual allegations are not sufficient to overcome Officer Bush's qualified immunity.

**3.    *42 U.S.C. 1983 (Count III)***

In Count III, Plaintiffs assert a Section 1983 claim against the City and Chief Vespia. Again, it is apparent that Plaintiffs' § 1983 claim is filed against Chief Vespia in his official capacity and is duplicative of the claim against the City. *LaMarca v. Turner, supra*; *Smith v. Allen, supra.*

It is well-established that a municipality may not be held liable under Section 1983 pursuant to a *respondeat superior* theory. *Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1287 (11th Cir. 2005). Rather, "[t]o impose liability on a municipality under § 1983, the plaintiff must identify a municipal 'policy' or 'custom' causing the deprivation of federal rights." *Id.* "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (internal quotation marks omitted). In actions involving a failure to train, "[o]nly where a

municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205 (1989).

In the Amended Complaint, Plaintiffs allege that the City's failure to train amounted to deliberate indifference because the City has a custom of condoning police brutality and a history of exonerating officers who use excessive force. Specifically, Plaintiffs allege that officers are "secure in knowing that a reported incident will not result in any disciplinary proceeding unless another officer can verify that the force was excessive," even when non-police witnesses complain of excessive force. (Dkt. 2 ¶ 33). At this juncture, Plaintiffs have sufficiently pled a basis for Section 1983 liability against the City. Whether Plaintiffs will be able to prove these facts is an issue better addressed by a dispositive motion, following the conclusion of discovery. The City's motion to dismiss Count III is therefore denied.

**4.     *Battery (Count IV)***

In order to state a claim for battery, a plaintiff must allege the essential elements of: (1) intent and (2) contact. *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996); *Brown v. J.C. Penney Corp., Inc.*, 521 F. App'x 922, 923 (11th Cir. 2013) (observing that a claim for battery requires "(1) the intent to cause a harmful or offensive contact with another person; and (2) an offensive contact that directly or indirectly results"). Intent "may be established if the plaintiff demonstrates the tortfeasor acted with reckless disregard of the consequences of his acts." *Chorak v. Naughton*, 409 So. 2d 35, 39 (Fla. 2d DCA 1981). Pursuant to Fla. Stat. § 768.28, a municipality may be held liable for an employee's intentional tort, if the employee was acting within the course and scope of his employment. *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 611 (Fla. 4th DCA

2013); *Woodall v. City of Miami Beach*, 599 So. 2d 231, 232 (Fla. 3d DCA 1992).

In Count IV, Plaintiffs attempt to allege a battery claim against the City based on a theory of vicarious liability. However, they only conclusorily allege that "one or more of the officers . . . did batter, touch, strike, and utilize excessive force against [Plaintiff]." (Dkt. 2 ¶ 38). The City correctly argues that this claim is subject to dismissal because Plaintiffs fail to plead specific facts supporting this claim, including the actions constituting the alleged battery and the officers' intent. The City's motion to dismiss is therefore granted as to Count IV, with leave to amend.

## 5.   *Loss of consortium (Count V)*

In Count V, Plaintiffs Lewis and Natasha Langston allege a claim for the loss of companionship, services, and consortium of their son Tyler, ostensibly against the City, Chief Vespia and Kevin Bush. With respect to Chief Vespia, this claim is duplicative of Plaintiffs' claim against the City.

Florida recognizes a claim for filial consortium. *Bashaway v. Cheney Bros., Inc.*, 987 So. 2d 93, 94 (Fla. 1st DCA 2008). The claim is derivative and requires that the injured party have the ability to recover in the first instance. *Stone v. United States*, 373 F.3d 1129, 1132 (11th Cir. 2004) (citing *Faulkner v. Allstate Ins. Co.*, 367 So. 2d 214, 217 (Fla. 1979)).

The City argues that Plaintiffs have not demonstrated compliance with the pre-suit notice requirements under Fla. Stat. § 768.28 as to this claim. The statute provides that, as a condition precedent to bringing suit, a claimant must first provide written notice of a claim to the appropriate agency. Fla. Stat. § 768.28(6). The notice provision "is strictly construed, with strict compliance being required." *Maynard v. State, Dep't of Corr.*, 864 So. 2d 1232, 1234 (Fla. 1st DCA 2004). With respect to derivative claims for loss of consortium, the Florida Supreme Court has held that notice of the underlying claim is not sufficient. Rather, the claimant must provide "a separate or

9

distinct notice" of the loss of consortium claim. *Metro. Dade Cnty. v. Reyes*, 688 So. 2d 311, 311 (Fla. 1996) (addressing spousal loss of consortium claim).

Although Plaintiffs have generally alleged compliance with conditions precedent (Dkt. 2, ¶ 3), there is no indication that they have provided the required pre-suit notice for the loss of consortium claim, and Plaintiffs do not address this argument in their response in opposition to the City's motion to dismiss. Moreover, in Count V, Plaintiffs fail to plead the basis for this derivative claim, nor do they identify the defendants against whom they are asserting the claim. Count V is therefore dismissed without prejudice, with leave to amend. *Reyes*, 688 So. 2d at 313; *Hattaway v. McMillian*, 903 F.2d 1440, 1449 n.12 (11th Cir. 1990).

## *Conclusion*

Based on the foregoing, it is **ORDERED** that Defendant City of North Port's Motion to Dismiss, or, in the Alternative, Motion for Definite Statement (Dkt. 3) is **GRANTED in part** as discussed. Chief Kevin Vespia's Motion to Dismiss (Dkt. 9) is GRANTED. And Kevin Bush's Motion to Dismiss is GRANTED, with leave to amend. Plaintiffs are granted leave to file a second amended complaint within twenty (20) days of the date of this Order.

**DONE AND ORDERED** this 27th day of January, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record